UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

GENARO CANO,

        Plaintiff,

                              CIVIL No.1:11-CV-761

vs.

NEVADA GENERAL INSURANCE
COMPANY,

        Defendant.

## DEFENDANT NEVADA GENERAL INSURANCE COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND FOR DAMAGES FOR INSURANCE BAD FAITH, AND NEVADA GENERAL INSURANCE COMPANY'S COUNTERCLAIM FOR DECLARATORY RELIEF

**COMES NOW** Defendant, Nevada General Insurance Company (NGIC) by its undersigned counsel, and for its *Answer to Plaintiff's Complaint for Declaratory Judgment and for Damages for Insurance Bad Faith,* states the following:

1. The allegations of paragraph 1 are admitted.

2. With respect to the allegations of paragraph 2, it is admitted that NGIC is a Nevada corporation licensed to do business in New Mexico. Any remaining allegations are denied.

3. With respect to the allegations of paragraph 3, it is admitted that Plaintiff's case is brought pursuant to the identified statutes, but it is denied that Plaintiff's claims are valid or that Plaintiff is entitled to the requested relief.

4. With respect to the allegations of paragraph 4, this case has been removed to the United States District Court for the District of New Mexico, where it is admitted that jurisdiction and venue are proper in this Court.

5. The allegations of paragraph 5 are admitted, and the referenced Declaration Page clearly shows that Plaintiff had rejected uninsured motorist (UM) coverage and that the policy did not include UM coverage.

6. With respect to the allegations of paragraph 6, it is admitted that the Declarations Page for the policy in effect at the time of the accident shows that Plaintiff had the stated Bodily Injury Liability Limits on the stated vehicles, and also shows that Plaintiff had "Rejected" uninsured motorist coverage on all of the vehicles.

7. The allegations of paragraph 7 are admitted.

8. With respect to the allegations of paragraph 8, it is admitted that Plaintiff suffered some injuries and damages as a result of the accident, but the remaining allegations are denied.

9. Defendant is without information sufficient to admit or deny the allegations of paragraph 9 at this time, which are therefore denied. The Accident Report shows that Ms. Maldonado was insured by Santa Fe Auto Insurance, policy # 34-53722.

10. With respect to the allegations of paragraph 10, it is admitted that on or about October 20, 2010, Plaintiff's counsel sent a letter of representation to NGIC asking whether there was uninsured motorist (UM) coverage under Plaintiff's policy, and asking for a copy of the signed waiver/rejection if there was no UM coverage. It is also admitted that in response NGIC sent a copy of the Declarations Page in effect at the time of the accident showing that UM coverages had been "Rejected" and also sent copies of the signed, dated, written rejections of UM coverages. Any and all remaining allegations of paragraph 10 are denied.

11. With respect to the allegations of paragraph 11, it is admitted that on or about 10/25/10, NCIG sent a letter to Plaintiff's counsel responding to the request for Plaintiff's written waiver/rejection of UM coverage, enclosing copies of the applicable signed, dated,

written rejections of UM coverages. Any and all remaining allegations of paragraph 11 are denied.

12. With respect to the allegations of paragraph 12, it is admitted that on or about 6/8/11, Plaintiff's counsel sent a letter to NGIC demanding UM coverage. NGIC states that the letter speaks for itself. Any and all remaining allegations of paragraph 12 are denied.

13. With respect to the allegations of paragraph 13, NGIC states that the letter from Plaintiff's counsel of 6/8/11 speaks for itself. All remaining allegations of paragraph 13 are denied.

14. With respect to the allegations of paragraph 14 it is admitted that NGIC sent a letter to Plaintiff's counsel dated 6/8/11 stating that it believed that considering all the circumstances Plaintiff's rejection of UM coverages was valid. NGIC otherwise states that said letter speaks for itself. All remaining allegations of paragraph 14 are denied.

15. For its answer to paragraph 15, NGIC restates and incorporates its answers to paragraphs 1 though 14.

16. The allegations of paragraph 16 are admitted.

17. The allegations of paragraph 17 are denied.

18. For its answer to paragraph 18, NGIC restates and incorporates its answers to paragraphs 1 though 17.

19. The allegations of paragraphs 19 through 22 are denied.

20. NGIC denies each and every allegation of Plaintiff's *Complaint* unless expressly admitted herein and above.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims and any recovery thereon are barred because they seek to impose contractual obligations on NGIC that violate NGIC's rights under the Constitution of the United States, specifically including the *Contracts Clause* and the *Takings Clause*. Under the facts and circumstances it would be a violation of the *Contracts Clause* and/or *Takings Clause* of the United States Constitution to force these Defendants to provide uninsured/underinsured motorist coverage where, as here, the insureds knowingly and voluntarily rejected uninsured motorist coverage by signing a clear and comprehensive rejection, and where the applicable declarations page shows that uninsured motorist coverage was "Rejected".

### SECOND AFFIRMATIVE DEFENSE

Defendant reserves the right to assert the defenses of waiver and estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims and any recovery thereon are barred by the U.S. Constitution, Article I, §10, Clause 1, and/or the *Takings Clause* of the United States Constitution deriving from the Fifth Amendment made applicable to the states by the Fourteenth Amendment.

### FOURTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert the defense of mitigation of damages.

### FIFTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert the defense of comparative fault, including comparative bad faith, if necessary.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for punitive damages are barred by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, as well as Article II §§ 13, 14, 18, and 19 of Constitution of the State of New Mexico. Any award of punitive damages under the facts of

this case is not justified or supported, would constitute a denial of equal protection, a denial of due process of law, a violation of the contract clause, and imposition of an excessive fine.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to adequately or properly state one or more legally viable claims for relief.

Defendant reserves the right to assert additional affirmative defenses that may be revealed through discovery.

**WHEREFORE,** Defendant, Nevada General Insurance Company, prays that Plaintiff take nothing by her claims, and for such other and further relief to which Defendant may be entitled at law or in equity by this pleading or proper amendment thereto.

### COUNTERCLAIM FOR DECLARATORY RELIEF

**COMES NOW** Nevada General Insurance Company (NGIC), by its undersigned counsel, now as Counterclaimant, and for its *Counterclaim for Declaratory Relief,* states the following:

1. Nevada General Insurance Company (NGIC) is a corporation organized under the laws of a state other than New Mexico, is authorized to transact business in New Mexico, and has its principal place of business in Las Vegas, Nevada.

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331. Plaintiff's right to relief requires resolution of substantial questions of federal law arising under the United States Constitution. This Court has original jurisdiction because this case arises under the Constitution of the United States. This Court also has jurisdiction pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1446.

3. NGIC files this action to seek a determination of the rights and legal obligations between NGIC and Counterdefendant, Genaro Cano, with respect to Uninsured Motorist (UM) coverage. At all relevant times Mr. Cano neither purchased nor paid for UM coverage, knowingly and voluntarily rejected UM coverage, and has since continued to knowingly and voluntarily reject UM coverage. Mr. Cano's has nonetheless demanded that NGIC provide UM coverage as a result of the judicial construction of NMSA 1978, §66-5-301 (1983) and 13.12.3.9 NMAC, in *Jordan v Allstate*, 2010-NMSC-051. NGIC reasonably believes that NMSA §66-5-301 and 13.12.3.9 NMAC, when taken as though they read precisely as interpreted in *Jordan v Allstate*, results in the statute and regulation violating the rights of NGIC under the United States Constitution, as explained further below.

4. This dispute arose due to a motor vehicle accident that took place on October 12, 2010 in Albuquerque, New Mexico. Mr. Cano was driving a Harley Davidson motorcycle east on Central Avenue when a 2004 Honda driven by Ericka Maldonado pulled out of a parking lot to cross Central Ave. Mr. Cano struck the rear of the Honda and then fell over.

5. Plaintiff Genaro Cano and/or his wife Ciprianita Cano, applied for insurance with NGIC a few months earlier on July 2, 2010. As part of their insurance application, the Canos signed and dated a written form voluntarily and knowingly rejecting all UM coverages. By signing and dating the written rejection of UM coverages, the Canos confirming their voluntary and knowing decision to reject all UM coverages in exchange for a lower premium. (**Ex. B**, *to Plaintiff's Complaint*). At the time of the application, NGIC gave the Canos a copy of the entire signed application, including the signed and dated written rejection of UM coveragtes, attached to their Policy booklet. The Policy thereafter renewed monthly.

6. In reliance on the Canos' voluntary and knowing decision to reject all UM coverages in exchange for a lower premium, and relying on the Canos' signed and dated written rejection of UM coverages, and relying on case law in effect at the time indicating that this was sufficient to constitute a valid rejection of UM coverages, NGIC issued a policy of auto insurance to the Canos, Policy #02101186 (the Policy). The Policy thereafter renewed monthly.

7. The Canos never purchased UM coverages from NGIC, never paid NGIC for UM coverages, and were never charged for UM coverages by NGIC.

8. Following issuance of the Policy by NGIC on 7/2/10, NGIC sent monthly Declarations Pages/Renewal Notices to the Canos for the Policy, all of which plainly and clearly showed, stated, and confirmed that the Canos had "**Rejected**" both Uninsured Motorist Bodily Injury and Uninsured Motorist Property Damage coverages. (*See*, **Ex. A** to Plaintiff's Complaint for the Declarations Page in effect on the date of the accident)**.**

9. As of the date of the subject accident, NGIC had complied with all requirements for a valid and enforceable rejection of UM coverages under the Canos' Policy, as the law of New Mexico existed at that time. The Canos' written rejection of UM coverages was attached, stamped, or otherwise made a part of the policy that was delivered to Canos.

10. On or about January 19, 2011, the New Mexico Supreme Court's opinion in *Jordan v Allstate*, 2010-NMSC-051, was published in the Bar Bulletin. That opinion interpreted and judicially rewrote NMSA 1978, §66-5-301 (1983) to impose additional new requirements for a valid rejection of UM coverage. In *Jordan v Allstate* the Court effectively rewrote NMSA §66-5-301 to require auto insurers to provide policyholders with the premium costs corresponding to all available levels of UM coverage (a menu of available options), for a rejection of UM coverage to be valid. *Id*. at ¶¶2, 21 & 30.  It held that failure to do so would result in judicial

reformation of the policy to include UM coverage equal to liability limits of the policy. *Id*. at ¶¶2, 36.

11. In *Jordan v Allstate*, 2010-NMSC-051, the Court said that it's new construction of and new requirements for compliance with NMSA §66-5-301 would be applied retroactively, without limitation. *Id*. at ¶28. The Court said this would ensure "that every insured has been afforded . . . UM/UIM insurance coverage" [absent a rejection conforming to the new requirements]. *Id*. at ¶28.

## DECLARATORY RELIEF

12. In determining whether NMSA §66-5-301, as rewritten by the Court in *Jordan v Allstate*, is invalid under the United States Constitution, the court must take the statute as though it read precisely as the Court in *Jordan v Allstate* has construed/interpreted it.

**A. CONTRACT CLAUSE CLAIM**

13. On information and belief, NMSA §66-5-301 as construed and rewritten by *Jordan v Allstate* violates the *Contracts Clause* of the United States Constitution, which prohibits the states from enacting any "Law impairing the Obligation of Contracts. . . ." *U.S. Const. Art. 1, § 10, cl. 1*.

14. NMSA §66-5-301, as construed and rewritten in *Jordan v Allstate*, operates as a substantial impairment of the contractual relationship between NGIC and Mr. Cano, and also operates as a substantial impairment on an abundance of other contracts between NGIC and policyholders who, like Mr. Cano, never purchased or paid for UM coverage as part of their auto policies with Nevada General. NMSA §66-5-301, as construed, also burdens and impairs contracts between NGIC and other policyholders, where such policyholders (unlike Mr. Cano) did in fact purchase and pay for UM coverage. *Jordan v Allstate* in effect uses premiums paid

8

by such other persons to fund UM coverage for persons, like Mr. Cano, that neither purchased nor paid for UM coverage.

15. The interference with and substantial impairment of contract imposed on NGIC and others by NMSA §66-5-301, as construed in *Jordan*, includes, but may not be limited to, the following:

a. NMSA §66-5-301 as judicially rewritten severely disrupts NGIC's contractual expectations with respect to contracts of insurance where policyholders, like Mr. Cano, neither purchased nor paid for UM coverage. NGIC does not have what it bargained for because NMSA §66-5-301 now requires NGIC to provide coverage for a risk for which it was never paid a premium by the policyholder, and where NGIC had complied with the requirements for a valid rejection of UM coverage that were in effect prior to *Jordan v Allstate*.

b. NGIC is forced to accept a risk, applied retroactively without limit, of providing UM coverage for policyholders that never paid any premiums to cover the risk.

c. NMSA §66-5-301 as rewritten creates an enormous adjustment of the rights of policyholders and obligations of NGIC to policyholders, like Mr. Cano, for whom NGIC obtained proper and valid rejections of UM coverage under the law in effect prior to *Jordan*, therefore imposing a large financial burden on NGIC. This burden is not only borne by NGIC, but it is effectively at the expense of policyholders that did purchase and did pay premiums for UM coverage, whose premium payments under *Jordan* are in effect used to subsidize UM coverage for persons like Mr. Cano that never paid for and never purchased UM coverage.

   d.  NMSA §66-5-301 as rewritten by *Jordan* effectively punishes persons who did purchase and pay for UM coverage. There is no benefit to such policyholders from the rewriting of NMSA §66-5-301, whose premium payments serve as an effective tax to fund free UM coverage for persons who, like Mr. Cano, neither purchased nor paid for UM coverage.

   e.  NGIC relied heavily and reasonably on prior law in providing UM coverage only for those persons that purchased and paid for UM coverage, in determining what rates to charge them for UM coverage.

   f.  NGIC could not anticipate that it would retroactively without limitation be required to provide UM coverage for policyholders that never purchased or paid for such coverage, where it obtained rejections of UM coverage that were valid under applicable law prior to *Jordan*.

   g.  *Jordan* attaches new and unexpected legal consequences to a large number of insurance contracts entered into years ago, many of which expired long before the decision in *Jordan*.

   h.  As a result of *Jordan*, although the premiums NGIC charged for UM coverage for persons that purchased the coverage were adequate when made, they are no longer adequate to cover the burden of the added risk imposed by *Jordan* to provide UM coverage retroactively without limitation for all policyholders that neither purchased nor paid for UM coverage, and for which, like the Cano Policy, NGIC obtained rejections of UM coverage that were valid at the time.

   i.  UM Premiums are determined based on a careful assessment of risk to accumulate an adequate amount of money to cover the expected risks and payouts, and the burdens

created by *Jordan* would completely frustrate NGIC's prior efforts over a period of years to assess risk, plan for the risk, and charge an adequate amount in premiums to cover anticipated risks. This burden and disruption becomes enormous, because the retroactive application of *Jordan* extends this burden and disruption back over a period of several years at a minimum.

    j.    NMSA §66-5-301 as rewritten by *Jordan* imposes an unexpected liability on NGIC in potentially disabling amounts.

    k.    NMSA §66-5-301 as rewritten by *Jordan* dilutes the premiums collected by NGIC over several years by forcing NGIC to make additional payments which it cannot recoup because there is no provision in *Jordan* for backcharging premiums.

    l.    The unlimited retroactive application of §66-5-301 in *Jordan* has the effect of depriving NGIC of millions of dollars in premiums that would have been collected to cover the risk of providing UM coverage to policyholders from whom valid rejections were obtained under then applicable law, and who like the Canos never purchased or paid for UM coverage.

    m.    *Jordan* imposes an enormous financial burden on NGIC, only because NGIC may not have complied with the new requirement to offer a menu of pricing for levels of UM coverage, where NGIC complied with specific requirements for a valid rejection of UM coverage in effect at the time.

16.    The substantial impairment of and burden on contractual relationships that NMSA §66-5-301, as rewritten by *Jordan v Allstate*, imposes on NGIC, is not sufficiently justified by any public purpose. The public purpose set forth in *Jordan v Allstate* at ¶2 is: 1) allowing insureds to make a knowing and intelligent decision to receive or reject the full amount of [UM]

coverage to which insureds are statutorily entitled. [This purpose was already adequately satisfied by the requirements of prior case law.] Case law predating *Jordan* states that the public purpose of New Mexico's UM statute generally is to expand insurance coverage and protect members of the public against the hazard of uninsured motorists; to place insureds in the same position for purposes of recovering damages they would have been in had the tortfeasor had liability insurance. *See e.g.*, *Padilla v. State Farm Mut. Auto. Ins. Co*., 133 N.M. 661, 665 (2003). Such a purpose, and the limited way in which §NMSA 66-5-301 as rewritten by *Jordan* advances that purpose, does not rise to the level necessary to justify the enormous impairment and burden of contract that NMSA §66-5-301, as rewritten has created and now imposes. Specifically:

    a.    There is no emergency need to give UM coverage to only a limited class of policyholders that neither purchased nor paid for it.

    b.    *Jordan v Allstate* does not deal with a situation remotely approaching the broad and desperate emergency economic conditions of the early 1930's -- conditions of which the United States Supreme Court has taken judicial notice for purposes of a *Contracts Clause* analysis.

    c.    There is no general societal problem of such importance to justify the severe disruption of and burden on contractual expectations as they existed under law prior to *Jordan*, nor is the retroactive change in the law announced in *Jordan* necessary to rectify an important general social problem.

    d.    NMSA §66-5-301 does not protect a basic societal interest for the public at large. It merely takes money from NGIC [and other insurers] (funded by persons that paid for UM coverage), and gives that money to persons who, like Mr. Cano, neither purchased nor

paid for UM coverage and who already validly, knowingly, and intelligently rejected UM coverage under the law prior to *Jordan*. *Jordan* is therefore an unjustified windfall for a limited class of persons.

    e.    *Jordan*'s construction of NMSA §66-5-301 is not appropriately tailored to meet any kind of urgent societal need. Rather, it creates a windfall for a limited class of persons, instead of creating a benefit for the public at large.

    f.    The burden imposed on NGIC by *Jordan* is neither necessary to meet nor reasonable to meet a general societal concern, but instead provides a limited benefit to a select group (persons who never purchased and never paid for UM coverage).

17.    NMSA §66-5-301, as construed in *Jordan*, does not create a remedy for a broad or general social or economic problem. Instead, it provides limited benefits to a small segment of the public at large, and benefits only special interests. Notably:

    a.    Persons who have not purchased or could not afford to purchase auto insurance do not benefit from *Jordan*'s judicial construction of NMSA §66-5-301.

    b.    Persons who do not own a vehicle or could not afford to purchase a vehicle and instead use public transportation, do not have a direct benefit from the judicial construction of NMSA §66-5-301.

    c.    The judicial construction of NMSA §66-5-301 in *Jordan* only gives something to the very narrow class of persons: 1) who own autos; and 2) who could afford to purchase or did purchase auto insurance; but 3) who did not purchase and pay for UM coverage.

18.    NMSA §66-5-301, as construed in *Jordan*, amounts to the State adjusting the rights and responsibilities/obligations of contracting parties in a manner that is not based upon reasonable conditions and requirements, and is not of an appropriate character given the lack of a

sufficiently general and important societal problem. It is simply not precisely and reasonably designed to meet any serious temporary emergency or immediate problem affecting the general welfare of the public at large.

19. In analyzing the Constitutionality of NMSA §66-5-301, as rewritten by *Jordan*, under the *Contracts Clause*, the court need consider the interests of and impact on other members of the public who will see no benefit from the retroactive expanded judicial construction of NMSA §66-5-301. Specifically, many policyholders (unlike Mr. Cano) have in fact purchased and paid for UM coverage, but NMSA §66-5-301 as construed in *Jordan* is of no benefit to them. Instead, the premiums such policyholders paid for UM coverage will, under *Jordan*, be diluted to subsidize UM coverage for person that never purchased and never paid for UM coverage. This in turn results in a risk of reduction of funds available for those persons that did purchase and pay for UM coverage.

20. On information and belief, the Constitutional right to be free from the impairment of contract imposed by NMSA §66-5-301 as rewritten by *Jordan*, requires a choice open to an insurer such as NGIC to increase or "back charge" premiums, or in the alternative to terminate the policies effected and escape the added risk imposed by the statutory modification; the right to increase premiums alone is not sufficient.

21. On information and belief, the *Contracts Clause* of the United States Constitution is violated where a statute is construed to require an insurer to include new coverage in outstanding policies, and is also violated where a statute is construed to require the insurer to offer additional coverage at its own expense.

**B. TAKINGS CLAUSE CLAIM**

22. On information and belief, *Jordan*'s rewriting of NMSA §66-5-301 also violates the "*Takings clause*" of the United States Constitution, deriving from the *Fifth Amendment* mandate that "no person shall be . . . deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation", which in turn is made applicable to the states by the *Fourteenth Amendment*.

23. *Jordan*'s rewriting of NMSA §66-5-301 amounts to an economic regulation creating a liability to pay money to third parties, which does not pass a "justice and fairness" analysis. In addition, strict limits apply to the statute for purposes of constitutional scrutiny of *Jordan*'s rewriting of the statute, because of the retroactive operation of the new judicial construction of the statue.

24. NMSA §66-5-301, as construed by *Jordan*, imposes a severe retroactive liability on NGIC that provides gratuitous benefit to a very limited class of parties - generally policyholders that never paid for or purchased UM coverage. It also effectively punishes policyholders that did in fact purchase and pay for UM coverage, provides no benefit to them, and effectively uses money they paid in premiums to subsidize gratuitous UM coverage for policyholders that never purchased or paid for UM coverage. Such a result does not pass a justice and fairness analysis as required by the *Takings Clause*.

25. NGIC could not have anticipated the severe retroactive liability to pay money to third parties created by *Jordan*'s rewriting of NMSA §66-5-301. The extent of that liability is substantially disproportionate to the prior contractual relationships between NGIC and policyholders that neither purchased nor paid for UM coverage. *Jordan* in effect deprives NGIC of millions of dollars of premiums what would have been collected to afford such extensive

retroactive UM coverage. This loss of premiums also amounts to a taking that does not pass a justice and fairness analysis.

26.     NMSA §66-5-301, as construed by *Jordan*, has the effect of divesting NGIC of property long after the company believed its liabilities under the UM coverage provisions of the affected policies had been limited. It in effect divests NGIC of property long after the company believed its liabilities under auto policies dating back many years to have been settled, and long after the expiration dates of many policies. Moreover, the distance back into the past that NMSA §66-5-301, as rewritten by *Jordan*, reaches to impose a liability on NGIC, is particularly far reaching, and when coupled with the magnitude of that retroactive liability, contravenes the standards of justice and fairness required by the *Takings Clause*.

27.     An actual controversy exists between NGIC and Mr. Cano as to whether UM coverage is available to Mr. Cano under the Policy with NGIC.  NGIC has incurred and will continue to incur damages as a result of the disagreement with Mr. Cano concerning whether UM coverage is available under the Policy.

**WHEREFORE,** Nevada General Insurance Company prays that this Court enter judgment declaring that NMSA §66-5-301 as interpreted and rewritten by *Jordan v. Allstate* violates the *Contract Clause* and/or the *Takings Clause* of the United States Constitution, that NMSA §66-5-301 as construed and rewritten by *Jordan* is unenforceable as violative of the United States Constitution, that NGIC therefore has no obligation to pay any UM coverage to Mr. Cano as a result of the subject accident, and for such other and further relief to which NGIC may be entitled at law or in equity by this pleading or proper amendment thereto.

Respectfully submitted,

**RUGGE, ROSALES & ASSOCIATES, P.C.**

By: ___*(electronically signed)*_____
      **DALE R. RUGGE**
      *Attorneys for Plaintiff, Nevada General Insurance Company*
      901 Rio Grande Blvd. NW, Suite G-250
      Albuquerque, New Mexico 87104
      Phone:  (505) 243-3900
      Fax:  (505) 243-8678
      e-mail: dalerugge@rugge-rosales.com

I HEREBY CERTIFY that on the _26th_ day of August, 2011, I filed the foregoing

____*Answer and Counterclaim For Declaratory Relief*_____
electronically through the CM/ECF system, and that a true and correct copy of the foregoing was e-mailed and mailed to the following counsel of record:

Cloyd G. Hinkle
Cynthia A. Braun
*Attorneys for Plaintiff*
Hinkle Law Offices, P.C.
3939 San Pedro NE, Bldg A
Albuquerque, New Mexico 87119
(505) 883-4357
e-mail:  cbraun@hinklelawoffices.com


___*(electronically signed)*___
**DALE R. RUGGE**